## PLEADING WHERE NEGLIGENCE IS INVOLVED.

[Circuit Court of Logan County.]

THE CLEVELAND, CINCINNATI, CHICAGO & ST. LOUIS RAILWAY CO. v. WILLIAM P. TEHAN, A MINOR, ETC.

Decided, February Term, 1904.

*Negligence—In Placing an Employe at New Work and Giving Him an Inexperienced Assistant—Pleading Establishing a Causal Connection with the Injury—Defective Averment Supplied by the Evi-Negative Propositions—Damages for Loss of an Eye.*
*dence—Amendment Implied—Requests for Special Charges of*

1. Where the issue is not one of *quantum* of danger in the abstract, but is one of danger to the plaintiff, who in obedience to an order was injured while doing new work with the dangers of which he was not acquainted, the necessary causal connection is established in a petition embodying such facts in its allegations, and the petition is good against a general demurrer as a pleading of negligence.

2. If the causal connection is established between the general negligence alleged and the injury, it is also established between the special acts of negligence alleged limiting the general allegation.

3. The rule laid down in 49 O. S., 598, constitutes an exception to the general rule in this state that the duty to plead and the burden to prove contributory negligence is upon the defendant, and the exception should not be extended on mere suspicion to a case like the one at bar, which does not involve negligence in the matter of a defective appliance or an unsafe place to work.

4. Every purpose of pleadings is accomplished, when it is apparent to the parties and the court at the time the trial begins, what the affirmative and negative averments are upon which the plaintiff relies for a recovery.

5. Where a bill of exceptions showing all the evidence and proceedings at the trial is made by proper order a part of the record, and the evidence and proceedings sustain the recovery, an amendment to a defective pleading will be implied even on error; but if the evidence and proceedings do not sustain the recovery, the fact that an amendment was allowed and filed will not aid the verdict or judgment.

6. A case is presented for the jury, where there is a conflict of evidence with testimony admitted without objection which supplies omitted material averments of the petition.

7. Requests of the defendant for special charges to the jury, which set out a certain set of circumstances under which the plaintiff would not be entitled to recover, are satisfied by clear and correct statements in the general charge of the material and necessary facts which must be established by the plaintiff in order to recover.

8. A verdict of $5,000 for the loss of an eye is not excessive where the one injured is a young man just entering upon a career as a mechanic.

The original action was commenced in the court of common pleas by defendant in error as plaintiff against plaintiff in error as defendant. Said plaintiff stated in his petition in substance: That defendant, a railroad corporation, owns and operates extensive machine and repair shops in the city of Bellefontaine; that on January 1, 1902, plaintiff was employed by defendant to work in said shops as a boilermaker's helper, his duty being to help a boilermaker as an assistant, but not to perform a regular boilermaker's work; on or about July 21, 1902, the foreman of said boilermakers' shop ordered plaintiff to perform a regular boilermaker's work; on July 22, 1902, while plaintiff was performing a boilermaker's work under said orders, he was assisted by a young man, totally inexperienced in said work, as an assistant and helper; while plaintiff was so employed and with said inexperienced assistant, in cutting off the rivets of the connection of a boiler, plaintiff was holding a tool, called a side-set, on the head of a rivet and said assistant was striking said tool so as to remove the head of said rivet; said assistant struck said tool so carelessly and unskillfully that a piece of the head of said rivet struck plaintiff in the left eye, totally destroying the sight thereof so that the said eye had to be removed.

"Plaintiff avers that there was negligence on the part of defendant in the following particulars: 1. The plaintiff was young and inexperienced and did not know the danger he incurred by obeying the orders of said foreman in performing a regular boilermaker's work, instead of continuing in his regular employment as a boilermaker's helper and assistant. Defendant was guilty of negligence in ordering plaintiff, with his inexperience, to engage in and perform the duty of a regular boilermaker and in taking him from his position and work as

a boilermaker's assistant and helper.   2.   Said defendant was also guilty of carelessness and negligence in placing said inexperienced young man to work with him as an assistant.   He avers that his injury and the loss of his left eye was caused solely by the carelessness and negligence of the defendant.   He also avers that he, plaintiff, was not guilty of any carelessness or negligence and that he was without fault on his part.   He prays judgment in the sum of $10,000.''

To this petition defendant filed a general demurrer and the same was overruled.   Defendant thereupon filed its answer, in the first defense of which it denied each and every allegation in the petition of unskillfulness and inexperience on the part of the plaintiff and said assistant at the time of the injury and all allegations of carelessness or negligence on the part of defendant.   For a further defense said defendant avers that after plaintiff had been in the employment of defendant as a boilermaker's helper and as an apprentice or learner for more than six months continuously at low wages, he represented and stated to defendant's foreman that he, plaintiff, had acquired sufficient knowledge and skill in the business to entitle him to an advanced position and at advanced wages and that he had sufficient knowledge and skill to manage and conduct the cutting of rivets in which he was engaged at the time of the injury and in the manner in which he was so engaged.   Defendant states that in fact said branch of the business is one of which sufficient knowledge and skill to conduct it safely can be acquired by any one and especially by one of plaintiff's mechanical aptitude in a few days or even a few hours.   That defendant's foreman, upon diligent and careful inquiry, believing plaintiff's said statements to be true, expressly employed plaintiff to do this work he was doing at the time of his injury, paying him therefor increased wages.   Defendant denies plaintiff's alleged want of skill and his alleged want of knowledge or information of the dangers and perils incident to and connected with his employment at the time of said injury.   Defendant denies the want of knowledge, skill and experience on the part of the person who was helping plaintiff at the time of said injury and through whose alleged negligence plaintiff asserts the injury was caused in part.   Defendant avers that said assistant was

sufficiently skillful in that line of employment and was of suffi-
cient experience in the use of sledge hammers and such like
tools to be employed by defendant to perform the service in
which he was engaged at the time of said injury and that before
the employment of said assistant by defendant said defendant
made diligent and careful inquiry as to said assistant's knowl-
edge, skill and experience in the use of said tools, and from
the knowledge and information acquired by defendant on such
inquiry defendant believed and had the right to believe that
said assistant then possessed such sufficient skill, knowledge
and experience.    Defendant further avers that said assistant
was, at and before the time of the injury, an acquaintance of
and well known to plaintiff.    It is further averred that plaint-
iff's injury occurred "through one of those unavoidable acci-
dents possible to occur in any mechanical trade or business, when
conducted by the most skillful, which can neither be foreseen
nor guarded against by any care or diligence.    Plaintiff by
reply denies each and every allegation of the second defense
of the answer.

Upon issues thus joined the trial was had to a jury, certain
evidence referred to in the opinion was given by plaintiff with-
out objection, the court charged the jury as is stated hereafter
and a general verdict returned for plaintiff in the sum of
$5,000.    Defendant filed its motion for a new trial, one ground
of which was that the verdict is against and not supported by
sufficient evidence.    Pending this motion and before judgment
was entered on the verdict, plaintiff, against the objection and
over the exception of defendant, obtained leave to file an
amended petition to conform his pleading to the facts proved. An
amended petition was accordingly filed and defendant, without
waiving his objection to such filing, obtained leave to file and
thereupon filed an amended answer.    To this amended answer
plaintiff filed a reply.    Defendant's motion for a new trial was
thereafter overruled and judgment for plaintiff was entered on
the verdict.    The errors assigned are, in substance, in over-
ruling defendant's demurrer to the petition; in refusing re-
quests to charge; in the charge as given to the jury; in permit-
ting plaintiff to file his amended petition; that the verdict is

not supported by sufficient evidence; that neither the petition, or the amended petition states facts sufficient to constitute a cause of action, and the judgment is therefore contrary to law.

MOONEY, J.; DAY, J.. and NORRIS, J., concur.

The asserted defects in the original petition are these: Failure to state that the work at which plaintiff was engaged at the time of the injury was dangerous and *more* dangerous than plaintiff, as alleged, was employed to perform; failure to state that the helper assisting in the work at said time was incompetent and that defendant knew it was negligent in not knowing it and that plaintiff did not know it; and failure to allege a causal connection between the alleged acts of negligence and the injury to plaintiff.

It is not expressly alleged that the work was dangerous. It is stated that plaintiff in obeying orders and directions of the foreman at the time did not know the *dangers* that would attend his act of obedience, and that while performing such service he was injured without fault or negligence on his part. If these averments stood alone, no account being taken of any charge of negligence against defendant, we think the inference would arise from the facts stated, that the work was dangerous It is not stated that the work was *more* dangerous in the abstract than the work was that plaintiff alleges he was employed to perform. It is believed that the question is not one of *quantum* of danger in the abstract, but is one of danger to the plaintiff. It is alleged in the petition that plaintiff had been employed as a helper continuously for more than six months. It is not alleged that the work of the helper is in any degree dangerous to the helper himself. Unless we infer that such work is dangerous to the helper himself, it follows that if the work plaintiff was doing at the time of the injury was dangerous it was also more dangerous than the work of the helper. Again, if plaintiff worked as helper for six months it must be assumed that he knew the dangers incident to his work as helper. He alleges that he did not know the dangers of the work he was directed to do and was doing at the time of the injury. It was more dangerous *to him* to do work with the dangers of which he was

*not* acquainted than to do work with the dangers of which he *was* acquainted. Hence while not stated, it may be inferred that the work he was doing was more dangerous to him than the work he was employed to do and the ordinary risks of which he agreed to assume (*Consolidated Coal Co.* v. *Hoenni*, 146 Ill., 614; *Cincinnati, etc., R. Co.* v. *Lang*, 118 Ind., 579; *Pittsburg, etc., R. Co.* v. *Adams*, 105 Ind., 151; *Chicago, etc., R. Co.* v. *Bayfield*, 37 Mich., 210). It is not directly alleged that plaintiff was injured through or because of the particular acts of negligence of defendant charged in the petition. It is, however, alleged that plaintiff without fault on his part was injured through the negligence of defendant and that defendant was negligent in the following particulars: (Specifying them). It is also expressly stated that plaintiff having been employed to do certain work, was ordered to do other work with the dangers of which he was not acquainted and that while, in obedience to such order, *he was doing the new work* he was injured. We think this latter establishes the causal connection and besides was sufficient as against a general demurrer as a pleading of negligence (*Davis* v. *Guarnieri*, 45 O. S., 470), and besides we are also of opinion that while negligence is thus generally alleged, the general allegation would on demurer be limited by the particular specifications of negligence that are pleaded and those that are implied from them. In this view if the causal connection is established between the general negligence alleged and the injury it is also established so between the special acts of negligence alleged limiting the general allegation.

It is not expressly averred that the assistant, Ivory, was *incompetent.* It is averred that defendant was negligent in ordering plaintiff to do this work in connection with William H. Ivory, a totally inexperienced young man, as a helper. The allegation is in substance that defendant was negligent in ordering plaintiff to do the work under the circumstances disclosed and with an inexperienced assistant. Ivory may have been not incompetent to do the work but yet being without experience it may have been an act of negligence to send him to assist plaintiff under the circumstances then existing.

"The allegation in a pleading that the party complained against negligently committed the particular act which led to

the injury whose redress is sought furnishes the predicate for the proof of all such incidental facts and circumstances both of omission and commission, as fairly tend to establish the negligence of the primary fact complained of'' (*Davis* v. *Guarnieri,* 45 O. S., 470).

See particularly *Golley & Finley Iron Works* v. *Collam,* 9 C. C., 217—a case resembling this one on the facts. If it furnishes such predicate the general allegation is good against a general demurrer and at all events, in the absence of a motion to make definite and certain, is sufficient.

While it is very apparent that the petition is threadbare in spots still it is very doubtful whether the court below was not right in overruling the demurrer to that pleading. At the very least we think that every fact necessary to constitute a cause of action can be inferred from the facts expressly stated.

Certain other alleged defects in the petition are insisted to be fatal under the rule announced in the case of *Coal & Car Co.* v. *Norman,* 49 O. S., 598. That case announces a rule which constitutes an exception to the general rule in this state that the duty to plead and the burden to prove contributory negligence is upon the defendant. The general rule in this state still being recognized, the exception should not be extended upon mere suspicion. This case is not one of defective appliance or unsafe place and negligence charged in connection therewith and hence the case referred to does not apply. 'If it did, Ivory was employed by defendant two days before; defendant then had an opportunity and a duty to know what his qualifications were; plaintiff denies knowledge of the dangers and if those arose from the inexperience of the helper, then the denial goes to the effect of the inexperience of Ivory; defendant had conducted the shop for years and so is presumed to know what the fitness of Ivory was as well as the effect of his inexperience; so that from the facts stated, the facts required to appear by the rule laid down in the case cited may be inferred.

We have thus far proceeded upon the theory that if the demurrer to the petition were improperly overruled the error should reverse the judgment. There are exceptions to this rule and we proceed to inquire whether the case at bar is not within one or two of them.

The demurrer having been overruled defendant by leave filed its answer. Plaintiff had pleaded that his injury was due to defendant's negligence and arose from a risk not assumed by him. The first defense of the answer denied the negligence and also denied that the risk was not assumed. Under this pleading of the first defense all the evidence given at the trial would have been proper. But defendant by its second defense alleged that the work was *not* dangerous; that all risk of injury therefrom was open and apparent to plaintiff as to defendant's foreman or any other of its agents or servants; that plaintiff in a few days or even a few hours could acquire the knowledge and skill to perform said work safely and skillfully; that Ivory had sufficient *knowledge, skill* and *experience* to perform his part of the work properly, and before defendant employed said Ivory it made diligent inquiry and ascertained therefrom that he had such knowledge, skill and experience and defendant then believed and had good reason to believe such fact and that said Ivory was an acquaintance of and well known to plaintiff. It is further stated that the injury to plaintiff was due to an accident unavoidable in any mechanical trade, even when conducted by the most skillful. The plaintiff by reply denied these allegations.

It will not be contended that if the negative averments made up by the denial of these allegations of the second defense were inserted in the petition, the alleged defect would not exist. It is conceded by this second defense that the injury resulted from doing the work—hence the causal connection; that the injury or the possibility of it necessarily attends the work—hence it is dangerous; that defendant did inquire and know the fitness of Ivory to do the work and it is not alleged that plaintiff had made such inquiry or had such knowledge. Defendant denies acquaintance with Ivory and thus, taking the admission by the defendant and the denial by plaintiff together, it follows that the servant did not have equal means of knowing with the master. At all events taking all the pleadings together as they stood when the trial commenced it was perfectly patent to the parties and the court what the affirmative and negative averments upon which the plaintiff relied for a recovery in the

action were. Thus every purpose of pleadings was accomplished.

"Where a material fact is omitted in a declaration the defect is cured if the subsequent pleadings put the omitted fact directly in issue." *Elliott* v. *Stuart,* 15 Me., 190; *Fiebelman* v. *Ins. Co.,* 108 Ala., 180; *Gaines* v. *Summers,* 39 Ark., 482; *Worthley's Admr.* v. *Hammond,* 70 Ky., 510; *L. & N. R. R. Co.* v. *Lawson,* 88 Ky., 496; *Ritchie* v. *Ege,* 58 Minn., 291; *Wagner* v. *Mo. Pac. Ry. Co.,* 97 Mo., 512; *Allen* v. *Choteau,* 102 Mo., 309; *Hamilton* v. *St. Ry. Co.,* 17 Mont., 334; *The Nancy* v. *Fitzpatrick,* 3 Gaines (N. Y.), 38; *Knowles* v. *Norfolk Southern Ry. Co.,* 102 N. C., 59; *Cowel* v. *South Denver Real Estate Co.* (Col.), 63 Pac., 991; *Savings Bank* v. *Barrett* (Cal.), 58 Pac., 914. In this case a demurrer to the complaint was improperly overruled, yet it was held that the express denial of the omitted fact by the answer supplied the defect. *Fleuce* v. *Feru,* 60 Pac., 434; *Beebe* v. *Latimer* (Neb.), 80 N. W., 904. *Londerman* v. *Judy,* 2 C. C., 351, reversed on other ground, 48 O. S., 562.

In *Yocum* v. *Allen,* 58 O. S., 280, it was held that where a demurrer was improperly overruled to a petition a judgment thereon for plaintiff should not be reversed if it appears from the whole record that the overruling of the demurrer was an error which was not prejudicial to the adverse party. In that case the court quotes and enforces the provisions of Section 5115, Revised Statutes.

"The court in every stage of an action must disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect."

In harmony with this statute and upon the very reasoning of the case last cited it must be here held that the error, if any, in overruling the demurrer was not prejudicial to plaintiff in error.

Again:

"Where an averment which is necessary for the support of the pleadings is imperfectly stated, and the verdict on an issue

involving that averment is found, if it appears to the court after verdict that the verdict could not have been found on this issue without proof of this averment, then after verdict the defective averment which might have been had on demurrer is cured by the verdict." *Heymann* v. *The Queen*, 12 Cox C. C., 383. And see *Gittings* v. *Baker*, 2 O. S., 21; *Howe* v. *Ry. Co.*, 18 C. C., 600; *Davey* v. *Miller*, 37 W. L. B., 203; Gould on Pleading, 5th Edition, 558.

For a stronger reason this should be the law if without objection at the trial evidence is admitted to prove the allegation omitted or defectively stated. It has been held repeatedly in this state that where in the absence of a denial the allegations of a pleading are at the trial treated as denied a verdict and judgment rendered on that theory will not be disturbed for want of such denial. If this rule obtains in the absence of the usual pleading why should it not obtain in the case of a defective pleading as well.

We are of opinion that for the reasons stated and upon the proceedings had at the trial hereafter referred to, the question of the defect, if any, in the original petition is not now available to plaintiff in error as a ground to reverse the judgment and so the error, if any, in permitting the amended petition to be filed after verdict rendered, is also immaterial. Where the record of a particular case consists solely and alone of the pleadings, rulings thereon, record of the fact of a trial, verdict and judgment, and the petition is wanting in a material averment, it may be necessary to show an amendment to the petition to support a judgment thereon. But where, as here, a bill of exceptions showing all the evidence and proceedings at the trial is made by proper order *a part of the record* such amendment will rarely, if ever, be necessary, for in such case if the evidence and proceedings sustains the recovery an amendment will be implied even on error; but if the evidence and proceedings do not sustain the recovery, the fact that an amendment was allowed and filed will not aid the verdict or judgment.

The bill of exceptions, a part of the record, shows that at the trial and without objection plaintiff below offered evidence tending to prove that on December 29th, 1900, plaintiff, then seventeen and one-half years old, entered the service of defendant

at said shops as a rivet heater, his duties being to heat rivets, pass rivets and do other odd jobs around the shops, such as holding lights for boilermakers; he continued in this employment until about January 1, 1902, when he was advanced to the position of helper by the general foreman of the shop; the duty of a helper is to assist the boilermaker in whatever the latter has to do, but "he is not supposed to learn the trade at all." Plaintiff continued in the position of helper until July 21, 1902, when he was ordered by defendant's foreman to hold a side-set, which is a part of a regular boilermaker's work. He had never before performed that kind of labor, had no knowledge of its danger and neither defendant or any of its agents or servants nor any one else gave him any instructions as to how the work should be done, and no one informed him as to the danger incident to that kind of work. The side-set is a tool used in cutting the heads off boiler rivets when it is desired to remove the rivets from a boiler. The side-set is something the shape of a long bitted hammer, one edge of which is beveled something like a cold chisel and the other end shaped like the poll of the ordinary hammer. The side-set is fitted with a wooden handle about two and one-half feet long. When in use the cutting edge of the side-set is held against a rivet by the boilermaker and the helper with a sledge hammer strikes the poll of the side-set and then the head of the rivet is partly cut and partly broken off, when the rest of the rivet is driven through into the inside of the boiler and the rivet thus removed. The purpose of the side-set handle is to enable the boilermaker to stand at a point where he will not be in danger of being struck by the helper's sledge.

On July 21, 1902, plaintiff, with Ivory as his helper, worked eight hours in removing rivets from a boiler, and in that time they removed all the rivets on one side of a boiler. On July 22, 1902, they continued the work on the other side of the boiler from the time of commencing work until 8 o'clock in the morning. They were then ordered to and did perform some other work until nine o'clock, when they returned to the work of removing rivets. While removing the fourth rivet after their return, the injury of which plaintiff complains was sustained by him. At this time Ivory's hands were sore and he was

striking quite rapidly, and sometimes would hit the head of the side-set squarely, sometimes on the edges, and sometimes missed it altogether. The proper and safe manner, as plaintiff says he has since learned, for Ivory to strike was slowly and squarely on the head of the side-set. When the head of the fourth rivet was nearly off, a sliver of it flew off and struck plaintiff in the eye, destroying his sight and so injuring the organ that it had to be removed. Plaintiff never requested that he be put at this work. As a rivet heater plaintiff was paid eight cents per hour, as a helper fourteen and a half cents per hour until the middle of July, 1902, and after that plaintiff and all other helpers were paid fifteen cents per hour; boilermakers were then paid twenty-four to twenty-six cents per hour. The work of removing rivets in the manner above described is dangerous to the person holding the side-set. The danger consists in the fact that when the head of the rivet is being removed it or a part of it may fly in any direction and hit said person. To obviate this danger as far as possible skill is required on the part of the person wielding the sledge, to know with what force to strike when the head is nearly off; skill is also required on the part of the person holding the side-set to know the proper position—the angle at which the tool should be held. And with this skill on the part of both these persons the safety of the person holding the side-set requires that he hold a screen—a broom or cloth or some such article between him and the rivet to guard his person. Plaintiff when directed to do this work did not know and was not informed as to the position in which to hold the side-set, did not know and was not informed as to the necessity of a shield, and although while employed in the shop he had noticed persons using the side-set, he had never observed the same closely or more than casually. Ivory had never performed or assisted in this work before July 21, 1902; he had no knowledge of its dangers; his ability to wield the sledge, so far as skill is concerned, is such as he derived from driving spikes in railroad ties in railway repairs or construction, and this fact defendant knew and plaintiff did not know. Said Ivory was for six years an employe of defendant as a section hand, but whether immediately before his employment in the shops does not appear from the evidence. The want of skill of plaintiff, of Ivory, and

the absence of a shield may each and all have contributed to cause the injury. Assuming that there was a conflict of evidence upon all these points and assuming that the evidence admitted without objection supplied omitted material averments of the petition, we are of opinion that the case so made was and is one for the jury.

Defendant below presented eleven special requests to charge. These were all in terms refused. Most of them set out a certain set of circumstances under which the plaintiff would not be entitled to recover. The court, and we think very wisely and properly, contended itself with a statement of the facts that if proved would authorize a recovery, and stated in effect that if these necessary facts were not proved the verdict should be for defendant. The charge is clear, concise and correct. The jury by reason of its clearness could understand it; of its conciseness could have remembered it, and of its correctness could not have been misled as to the law. The benefit of the special requests so far as they are correct was secured to defendant by the general direction of the court to find for defendant if the material and necessary facts upon which plaintiff's right to recover depended were not each and all of them proven.

The point upon which we have had some hesitation was the amount of the damages. But we discover that this is not stated as a ground of the motion for a new trial nor specially assigned as error here. This young man has been deprived of one eye by a violent injury. It is common knowledge that the sight of the other may thereby be impaired or lost. He was entering upon a career as a mechanic for which he had some aptitude. He may be compelled to follow other lines, or, if he continue in the same line, will or may be less efficient and will run a double hazard of total loss of sight in its pursuit. We conclude that all these facts were as well known to the jury and the trial judge as to us and that, in fixing the damages under the circumstances of this case, they had assurance of arriving at a correct result equal in every respect to us, and so, particularly when not requested, we will not hold that the damages are excessive.

We find no reversible error in the record and so the judgment is affirmed at costs of plaintiff in error. Judgment for costs

and execution awarded and cause remanded to the common pleas for execution.

*West & West* and *Samuel H. West,* for plaintiff in error.

*John A. Price* and *Thos. M. Shea,* for defendant in error.